1  ENRIQUE SANTOS (SBN 93256)
   esantos@comcast.net
2  842-B Rockville Pike #511
   Rockville, MD 20852
3  Telephone: 240-888-8047
   Facsimile: 240-465-0698
4  Attorney for Plaintiff

FILED

2012 AUG 13   AM 10: 42

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:_____

5

6  **COPY**

7

8  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**

9

10 MARCELA S. SANTOS,            CV 12 - 06952 ABC (JCGx)
   aka D.L. SANTOS, an individual

11                               )  CASE NO. _____
                                 )
         Plaintiff,              )
12                               )  **COMPLAINT FOR BREACH OF**
                                 )  **FIDUCIARY AND CONTRACT**
         vs.                     )  **DUTIES; PROMISSORY**
13                               )  **ESTOPPEL**
   POSSE FOUNDATION, INC., a New )
14 York Corporation, and TRUSTEES OF )
   GRINNELL COLLEGE, dba GRINNELL )  **DEMAND FOR JURY TRIAL**
15 COLLEGE, an Iowa Corporation,  )
                                 )
16       Defendants.             )
   _____)

17

18      Plaintiff MARCELA S. SANTOS, aka D.L. SANTOS ("D.L."), for her

19 Complaint against Defendants THE POSSE FOUNDATION, INC.("Posse") and

20 THE TRUSTEES OF GRINNELL COLLEGE ("Grinnell" or "the College"), and

21 each of them, alleges as follows:

                Complaint and Demand for Jury Trial - 1

### *JURISDICTION AND VENUE*

1.      Plaintiff's action is authorized by 28 U.S.C.A. § 1332(a).  Each claim concerns a controversy in excess of $75,000 and there is complete diversity of citizenship between Plaintiff and Defendants.

2.      This Court has the power to exercise general jurisdiction over Defendants, as they are physically present in this district directly and through agents.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1), (d).

### *PRELIMINARY STATEMENT*

4.      This is a diversity action for damages suffered by the individual plaintiff due to corporate defendants' breach of their fiduciary and contract duties.

5.      Plaintiff, a high-achieving college student, writes papers, takes tests, participates in class and demonstrates mastery of academic subjects without help.

6.      But at times relevant to this action, she needed help with simple tasks like organizing, prioritizing, calendaring and monitoring work so missed papers would not handicap her grades and deprive her of a top level education commensurate with her capabilities. Her bipolar disorder worsened her difficulties.

7.      Defendants have a bi-coastal joint enterprise, a program tailor-made for disadvantaged high achievers like Plaintiff.  Every year this program sends 20 such students from Los Angeles and Washington, D.C. to college and helps them conquer personal shortcomings that threaten their academic success.  The program promises to mentor, coach, advise and enable its students to succeed on their merits

1   by helping them cope with their social, personal and institutional challenges.

2       8.    Plaintiff signed on with 19 other L.A. and D.C. students and went to

3   college in 2008-2009.  There she learned that the program did not and would not

4   give her the promised help and that the College would not honor her ADA request.

5                                    ***THE PARTIES***

6       9.    Plaintiff MARCELA S. SANTOS, aka D.L. SANTOS ("D.L."), is a

7   twenty-two -year-old individual domiciled in Maryland who is, and was at all

8   relevant times, a resident of Rockville, Maryland, which adjoins Washington, D.C.

9       10.   Defendant POSSE FOUNDATION, INC. ("Posse") is a New York

10  not-for-profit corporation with its principal place of business in New York, New

11  York that is, and was at all relevant times, a citizen of New York.

12      11.   Defendant THE TRUSTEES OF GRINNELL COLLEGE, doing

13  business as GRINNELL COLLEGE ("Grinnell" or "the College"), is an Iowa

14  nonprofit corporation with its principal place of business in Grinnell, Iowa that is,

15  and was at all relevant times, a citizen of Iowa.

16

17                  ***PENDENCY OF OTHER ACTION OR PROCEEDING BEFORE
                    U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA***

18      12.   A lawsuit in the District of Columbia, the locus of the parties'

19  relationship, involves materially the same facts in this action.  *Santos v. Trustees of*

20  *Grinnell College*, U.S. District Court for the District of Columbia, Case 1:12-cv-

21  334-RC.  A Notice of Pendency of Other Action or Proceeding has been filed

herewith pursuant to Local Rule 83-1.4.1.

13.   The District of Columbia suit alleges claims arising from these facts which are not time-barred in that forum.

14.   Plaintiff's remaining claims arising from these facts are alleged in this Complaint, because they are not time-barred in this forum where Defendants' also pursue their joint enterprise to recruit students like Plaintiff into their program.

15.   In the interest of justice, Plaintiff will file a motion to transfer this action to the U.S. District Court for the District of Columbia.

## FACTS

### I. Posse, Grinnell and Their Joint Enterprise

16.   Defendant Posse is registered to do business in this State.  Its Los Angeles office ("Posse-LA") serves as the local presence for Posse proper.

17.   Posse has joint enterprises with forty-one nationally-ranked colleges. Grinnell College is one of these colleges.

18.   The Posse Grinnell joint enterprise is a bi-coastal program.  Its common purpose is twofold:  It recruits disadvantaged students from the L.A. and D.C. metro areas to enroll in the College's academic program.  It then provides a personalized support program to twenty students from these areas to help them stay enrolled at Grinnell College.  Grinnell and Posse have a right to jointly control their common undertaking and terminate the relationship.

19.   The L.A. and D.C. arms of the joint enterprise follow similar

1    procedures.  In Los Angeles, Posse-LA annually recruits more than 1,200 area

2    students, vets them over three months, and selects 20-25 finalists to vie for ten of the

3    program's twenty slots.

4         20.    At this point, the finalists must apply for admission to the College's

5    academic program.  They do so through Posse-LA rather than in Iowa.  Accordingly,

6    the activities of the Iowa Admissions Office are transferred to Posse-LA, such that

7    Posse-LA essentially becomes a California-based Admissions Office for the finalists

8    and is solely responsible for receiving and reviewing their standardized test scores,

9    high school transcripts, recommendation letters, and admission applications.  Posse-

10   LA prepares each finalist's application package for a binding early admissions

11   decision.  Then, each fall, one or more Grinnell admissions officers travels to Posse-

12   LA to interview the finalists, evaluate their applications, decide who is admitted and,

13   while still here, call the winners to contractually bind them to attend the College.

14        21.    The ten L.A. winners and their ten counterparts in D.C. who have

15   followed a parallel path are then enrolled in the joint Posse Grinnell program.

16        22.    The ten L.A. winners are next trained for college at the Posse-LA office

17   for eight months by Posse <u>and</u> Grinnell staff, who will also regularly meet with them

18   there over their 4 undergraduate years.  At these times, Grinnell representatives from

19   its President's Office, Admissions Office, Financial Aids Office and other

20   departments and divisions will generally meet the L.A.-area participants and their

21   parents at status conferences, financial aid and curriculum planning sessions, local

1    retreats and other student support events.

2        23.    Posse's Washington, D.C. office carries out these same procedures on

3    behalf of the joint enterprise and Grinnell's Admission Office with respect to D.C.-

4    area students.

5                 ***II. D.L.'s Connection to the Posse Grinnell Joint Enterprise***

6        24.    D.L. was recruited by Posse's Washington, D.C. office ("Posse-DC"),

7    as her Maryland domicile is in the D.C. metro area, and she enrolled in the Posse

8    Grinnell program when the College admitted her there.  But for the program's

9    representations and promises, she would never have signed up to attend an isolated

10   rural Iowa campus.  Over eight months of training, over two in-residence semesters

11   and over school breaks, the Posse-DC staff comprised her principal program

12   contacts.  Her on-campus mentor was her only program contact in Iowa.

13       25.    D.L. was lured into placing her trust in the program because Posse and

14   Grinnell insisted they would help mitigate the effects of her difficulties with

15   tracking her academic progress and managing her school work.

16       26.    Most of her peers were similarly motivated.  And like them, she had

17   an Achilles' heel that threatened to undermine her academic successes up to that

18   time.  Her achievements included seven years in nationally-ranked magnet schools

19   and twelve Advance Placement, International Baccalaureate and standardized

20   college exams (six ranked in the 97th+ percentile; six in the 92nd+ percentile).

21       27.    D.L. was clearly able to do her own research and writing, understand

                        Complaint and Demand for Jury Trial - 6

1  course material, complete tests on time and demonstrate her scholarship, but her

2  difficulties with non-academic tasks made her vulnerable to academic failure

3  without an aid like the Posse Grinnell program.

4       28.    Fortunately, her difficulties were marginal to the essential nature of

5  being a college student, just as sightlessness is to a blind undergraduate.  Braille,

6  books-on-tape and other aids for the blind are like coaching, mentoring and similar

7  aids for D.L. They do not augment talent; they mitigate ancillary impediments and

8  enable the talent to show through.

9       29.    The Posse Grinnell program was created to provide just this kind of

10 assistance.  Indeed, D.L.'s peers struggled with a wide range of issues, from social

11 and emotional immaturity and frailties (including ordinary homesickness), mental

12 health crises (including AD/HD and one bipolar suicide attempt), personal crises

13 (including gay identity angst), to socio-economic misapprehension about college

14 studies (including cavalier study habits).

15      30.    Given this range of issues, it is no surprise that the Posse Grinnell

16 program was nonplussed about D.L.'s concerns about her vulnerability and her fear

17 that it was worsened by her bipolar disorder and its deleterious effects. When she

18 and her parents grilled Posse and Grinnell about how the program would help D.L.,

19 they were assured the program knew how to help high achieving bipolar and non-

20 bipolar college students alike and received a pledge the program could and would

21 help D.L. track her academic progress and would promptly intervene at the first

1    sign of academic trouble with advice, coaching, parent consultations and whatever

2    other support services and tools D.L. would need to succeed on her own merits.

3        31.    Based on these assurances, D.L. vested confidence, good faith,

4    reliance and trust in the Posse Grinnell program and went to Grinnell College as a

5    member of a bi-coastal cohort of twenty academically promising students with an

6    eclectic mix of personal foibles.

7        32.    In fact, D.L. and her peers were promised in writing that they would

8    be provided with an on-campus mentor who would meet with each of them every

9    week, alternating between one-on-one and group meetings.  All were told the

10   mentor was their on-campus contact and source of help.

11   ### III. Fiduciary and Contract Relationship During First Freshman Semester

12       33.    Near the end of the first semester, the Posse Grinnell program's

13   actionable conduct began to reveal itself.  Her on-campus mentor failed to track

14   D.L.'s academic progress and only learned late in the first semester that D.L. was

15   about to fail all her courses due to missed papers.  The mentor did little to nothing

16   to help or advise D.L. on measures she could take to avert academic ruin, lose

17   scholarships and stall her advancement.

18       34.    In fact, the on-campus Posse Grinnell program mentor abandoned her.

19   When D.L. was encouraged to see a College administrator about her missed

20   assignments, the mentor did not warn her that the function of the administrator —

21   the Dean of Academic Support and Advising — was to police errant students and

Complaint and Demand for Jury Trial - 8

1  shepherd them toward expulsion or withdrawal if they did not fly straight, unaided.

2      35.    For the remaining weeks of the semester, D.L. kept her mentor

3  informed about her dealings with the Dean and was told by her mentor to follow

4  the Dean's advice.  Her mentor's directive justifiably led her to believe that the

5  Dean's advice would be taking her best interests into account, just as she

6  justifiably expected the Posse Grinnell program to do the same.

7      36.    But left clueless by her mentor that she was, in fact, in the lion's den,

8  D.L. played into the Dean's false benevolence.  Significantly, both the Dean and

9  D.L.'s mentor concealed that the Dean was also the College's ADA Coordinator,

10  who, by then, took the unusual step of bluntly asking for D.L.'s trust and

11  confidence in order to secure D.L.'s consent to directly contact her psychiatrist for

12  her so they could figure out how to help D.L.

13      37.    The Dean/ADA Coordinator thus injected herself in D.L.'s mental

14  health affairs and never dealt with D.L. at arms' length. For instance, D.L. was

15  excluded from conversations between the Dean/ADA Coordinator and the

16  psychiatrist.  The Dean/ADA Coordinator arranged the wording of the

17  psychiatrist's correspondence with the school.  The Dean/ADA Coordinator kept

18  D.L.'s Posse Grinnell staff, including her on-campus mentor, informed of her

19  dealings with D.L. and her psychiatrist; D.L. likewise kept the Posse Grinnell

20  program informed.

21      38.    This conduct justifiably lulled D.L. into believing that the Dean/ADA

1    Coordinator was indeed looking after her best interests.  The Dean/ADA

2    Coordinator and the Posse Grinnell program staff all knew that this was what D.L.

3    believed and neither disabused her of it.

4         39.    D.L.'s psychiatrist told the Dean/ADA Coordinator that D.L. was on

5    anti-depressant medications whose adverse side effects were the reason why she

6    had fallen behind on her assignments.  The Dean/ADA Coordinator then conveyed

7    this information to faculty.

8         40.    It is telling that the Dean/ADA Coordinator knowingly withheld from

9    D.L. the fact that the condition her psychiatrist described was a disability covered

10   under the ADA and that she could and should consult her mental health

11   professional(s) for advice about promptly invoking the ADA and asking for

12   reasonable accommodations, such as more time to complete coursework — much

13   like the additional time to complete tests which her peer in the Posse Grinnell

14   program received as an ADA accommodation for her bipolar disorder.

15        41.    The Dean/ADA Coordinator instead directed D.L. to negotiate *ad hoc*

16   arrangements with her professors on her own.

17        42.    But D.L.'s inexperience, ignorance, embarrassment, powerlessness

18   and impaired state conspired against her.  Rudderless, adrift and alone, she tried

19   and failed to negotiate a meaningful arrangement with indifferent and hostile

20   professors.

21        43.    Yet all D.L. needed was additional time, to be determined by her

Complaint and Demand for Jury Trial - 10

1    mental health professionals, to complete assignments as her new medication's

2    adverse effects receded and their benefits kicked in.

3         44.      Significantly, her other coursework had not suffered. Thus, D.L. was

4    in other respects like any other student. The new medication did not affect

5    focused, structured activities in a group setting. She went to nearly all of her

6    classes. And she studied and took without fail every exam administered in every

7    one of her courses throughout the semester.

8         45.      Thus, as D.L. faced total failure on the eve of finals, the Dean/ADA

9    Coordinator misrepresented that her only remaining option was to complete her

10    missing coursework within two weeks after finals. This was the College's policy

11    for all non-disabled students — or they would fail.

12         46.      But then, the Dean/ADA Coordinator offered D.L. a way out. If the

13    Dean/ADA Coordinator could get the psychiatrist to write the College to explain

14    her medical state, she would secure a medical leave of absence and D.L.'s

15    transcript would show she withdrew from classes without grades. It was explained

16    that a full slate of failing grades was not in her best interest, because it would put

17    her on academic probation and endanger her scholarship and continued attendance

18    at the College. On the other hand, a transcript with a slate of "Withdrawals" on her

19    record would avert probation but it would waste one semester of her eight-semester

20    full-tuition scholarship.

21         47.      Presented in this way, it was a Hobson's choice: D.L. could destroy

1   her academic record with failing grades. Or, she could admit defeat now and allow

2   her record to be tarnished with a no-show, the loss of her entire first semester's

3   work and scholarship benefit.

4          48.    It was a bitter pill to swallow.  D.L. had, in fact, worked throughout

5   the semester, attended classes, taken all the exams, and had learned the material.

6   And she was willing and expected to take the finals just as she had with all her in-

7   class exams.

8          49.    But absent advice from those she trusted and who had promised to

9   guide her best interests, D.L. grudgingly gave in to the only slim choice presented

10  to her.

11         50.    Thus, the Dean/ADA Coordinator worked directly with D.L.'s

12  psychiatrist to craft the correspondence that would secure the medical leave.

13         51.    But there was another choice: One that would give her the chance to

14  earn a grade in her courses.  Neither the Dean/ADA Coordinator nor the Posse

15  Grinnell program advised her that the ADA allowed for reasonable

16  accommodations under the circumstances beyond those granted non-disabled

17  students if her mental health professional documented her disability and

18  determined how long it would take her new medication's adverse effects to recede

19  and their benefits to kick in. This would have allowed D.L. to take her final exams

20  and, afterwards, proceed to complete her missing assignment in reasonable time

21  appropriate to the circumstances.

52.     In fact, however, the Dean/ADA Coordinator usurped the right of D.L. and her mental health professionals to determine whether reasonable accommodations were appropriate and, instead, substituted her own judgment that no reasonable accommodations could help D.L. succeed.

53.     It is telling that the Dean/ADA Coordinator's sense of entitlement, control and influence over D.L. was so strong that she was displeased when D.L. asked her father to inquire about the terms of her leave.  Later in the second semester, the Dean/ADA Coordinator took umbrage when D.L. blocked the Dean's intermeddling with her psychiatrist.

### IV. Fiduciary and Contract Relationship During Second Freshman Semester

54.     Notwithstanding the blow to her self-respect and her academic record, D.L. refused to accept defeat or let the Posse Grinnell program off the hook.  She returned home, asked to meet with her Washington, D.C. handlers and got their commitment that the program's failings would be corrected in her second semester. To show her resolve, D.L. developed a plan to ensure she and her mentor would be regularly informed about her academic progress and took the lead in implementing it after obtaining the program's written assurances it would support her endeavors.

55.     D.L. returned to the College even though the Dean/ADA Coordinator resisted her return and, yet, agreed to support her plan of action to remedy the first semester's lack of information on her academic progress.  On campus, though, the College rebuffed her and blocked her plan's efforts to have her professors regularly

answer four questions relating to her class attendance and participation, her course work and interim grades.  Therefore, armed now with knowledge of the ADA, she invoked the ADA and, with the support of five (5) psychiatrists and psychotherapists, she secured the College's acknowledgment that she was a student with a bipolar disability, but her request that the four questions be answered as a reasonable accommodation was denied.[1]

56.     Moreover, D.L.'s on-campus mentor declined to help and her Posse-DC contacts were unable or unwilling to fulfill the program's commitments to her.

57.     Thus D.L. was again adrift.   She was, in fact, in a worse situation because she challenged the College's authority to decide and dictate its students' fate.  And so as her comeuppance, D.L. was forced to contend alone with College administrators and faculty who perceived disadvantaged students in the Posse Grinnell program or with ADA accommodations as second class.

58.     By midterms, D.L. was compelled to withdraw from a course with a professor who belittled her for her disability.[2]  Accordingly, D.L. completed only two courses in her second semester without meaningful help or support from the Posse Grinnell program or the College's ADA Coordinator.

59.     Therefore, rather than return for her sophomore year, D.L. took a

---

[1] This failure to provide reasonable accommodations is a claim set forth in her U.S. District Court action in the District of Columbia.  See Related Case section, *supra*.

[2] Claims for infliction of emotional distress are set forth in her U.S. District Court action in the District of Columbia.  See Related Case section, *supra*.

1    year's non-medical leave of absence to think things through ████████

2    █████████████████████████████████████████████████████████

3    █████████████████████████████████████████████

4    ███████████████    and resumed her studies elsewhere.

### FIRST CAUSE OF ACTION
### Breach of Posse Grinnell Program's Fiduciary Duties of
### Loyalty, Skill, Care, Candor and Inquiry
### (Santos v. Posse and Grinnell)

60.    D.L. adopts paragraphs 1 through 59 as if fully set forth herein.

61.    D.L. and her peers in the program were in a vulnerable position.  The program knew this and willfully enticed her and her peers to participate.

62.    D.L. justifiably vested confidence, good faith, reliance and trust in the Posse Grinnell program based on these promises.

63.    D.L. and the Posse Grinnell program were in a fiduciary relationship.

64.    The program had a fiduciary duty to give her its undivided loyalty, act with the highest degree of skill, candor and care, and actively inquire about her academic progress.

65.    The program breached its duties and, as a consequence, D.L. suffered actual and proximate harm.

66.    The program's conduct was oppressive.  It willfully and consciously disregarded D.L.'s rights and subjected her to cruel and unjust hardship in conscious disregard of those rights.

67.    Posse and Grinnell are jointly and severally liable for D.L.'s indivisible injuries arising from their program's breach of duties and obligations.

68.    Alternatively, the program is either a Posse or Grinnell undertaking.

69.    Plaintiff prays for relief as set forth below.

### SECOND CAUSE OF ACTION
#### Breach of Grinnell's Independent Confidential or Fiduciary Relationship with Plaintiff
##### (Santos v. Grinnell)

70.    D.L. adopts paragraphs 1 through 59 as if fully set forth herein.

71.    The Dean/ADA Coordinator obtained D.L.'s trust and confidence, knowing that D.L. was vulnerable and did not fully and accurately apprehend the Dean/ADA Coordinator's allegiance to the College.  The Dean/ADA Coordinator informed College Vice Presidents and attorneys about her dealings with D.L.

72.    The College and D.L. entered into a confidential or fiduciary relationship.

73.    The relationship imposed on the College equitable duties of loyalty, candor and care of the highest order for the benefit of D.L.

74.    The Dean/ADA Coordinator abused her position of power, exercised undue influence and stripped D.L. of free will in order to pressure her into making uninformed decisions against her best interest so as not to bother the College with an inconvenient ADA accommodation request.

75.    The College breached its duties and, as a consequence, D.L. suffered

1  actual and proximate harm.

2      76.    The College's conduct was despicably malicious and oppressive.  It

3  willfully and consciously disregarded D.L.'s rights and subjected her to cruel and

4  unjust hardship in conscious disregard of those rights.

5      77.    Plaintiff prays for relief as set forth below.

6                            **THIRD CAUSE OF ACTION**
                  **Breach of Written Contract for Mentor's Nonperformance**
7                          *(Santos v. Posse and Grinnell)*

8      78.    D.L. adopts paragraphs 1 through 59 as if fully set forth herein.

9      79.    D.L. had a written agreement with the Posse Grinnell program or with

10  Posse alone which was entered into for valuable consideration.  It required that

11  D.L. and her mentor meet every week in alternating group and individual sessions.

12      80.    The parties understood that this obligation was for the purpose of

13  helping D.L. track her academic progress and advise as necessary or appropriate.

14      81.    The mentor did not perform this obligation and breached the

15  agreement.

16      82.    D.L. performed all or substantially all of her part of the bargain. All

17  conditions precedent to the mentor's obligation to perform occurred.

18      83.    D.L. thereby suffered consequential and incidental damages.

19      84.    Posse and Grinnell are jointly and severally liable for D.L.'s

20  indivisible injuries arising from their program's breach of duties and obligations

21  under the agreement or, alternatively, Posse alone is liable under the agreement.

85.     Plaintiff prays for relief as set forth below.

### FOURTH CAUSE OF ACTION
**Breach of Written Second Semester Commitment of Support**
*(Santos v. Posse and Grinnell)*

86.     D.L. adopts paragraphs 1 through 59 as if fully set forth herein.

87.     In the second semester, D.L. had a written agreement with the Posse Grinnell program which was entered into for valuable consideration.

88.     Alternatively, D.L. had a written agreement with the Posse Grinnell program which was entered into for valuable consideration.

89.     This agreement amended the original agreement between the parties or constituted a separate binding undertaking.

90.     The new written agreement required that the program or Posse alone uphold and follow concrete steps laid out by D.L. to avert a repetition of the program's first semester failure to help her track her academic progress and provide adequate support appropriate to her needs.

91.     The program (or, alternatively, Posse alone) breached said agreement and caused D.L. to suffer consequential and incidental damages..

92.      D.L. performed all or substantially all of her part of the bargain.  All conditions precedent to her counterparty's performance occurred.

93.     Posse and Grinnell are jointly and severally liable for D.L.'s indivisible injuries arising from their program's breach of duties and obligations under the agreement or, alternatively, Posse alone is liable under the agreement.

Complaint and Demand for Jury Trial - 18

94.     Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
**Promissory Estoppel Relative to Second Semester Commitment**
*(Santos v. Posse and Grinnell)*

95.     D.L. adopts paragraphs 1 through 59 as if fully set forth herein.

96.     The Posse Grinnell program or, alternatively, Posse alone made a clear and definite promise to uphold and follow concrete steps laid out by D.L. so that she and her mentor could fulfill the program's objectives as applied to her.

97.     The promise was made clearly knowing that D.L. sought to determine if the program (or Posse) supported or opposed her action steps, and D.L. justifiably relied on this promise and acted to her substantial detriment by returning to the College for a second semester.

98.     The program (or Posse) did not uphold its promise and thereby caused D.L. to suffer consequential and incidental damages.

99.     Injustice can be avoided only by enforcing the promise.

100.    Posse and Grinnell are jointly and severally liable for D.L.'s indivisible injuries arising from their program's failure to perform or, alternatively, Posse alone is liable.

101.    Plaintiff prays for relief as set forth below.

### RELIEF REQUESTED

102.    Plaintiff requests judgment in her favor and asks this Court for the following relief:

Complaint and Demand for Jury Trial - 19

1        a)    For $400,000 in general and special damages against Defendants,

2   jointly and severally, in an amount according to proof under all of the foregoing

3   Causes of Action;

4        b)    For emotional distress and other non-economic damages against

5   Defendants, jointly and severally, under the First and Second Causes of Action;

6        c)    For punitive damages against Defendants, jointly and severally, under

7   the First and Second Causes of Action;

8        d)    For consequential and incidental damages against Defendants, jointly

9   and severally, under the Third, Fourth and Fifth Causes of Action; and

10       e)    For such other relief as the Court deems proper.

11  Date:  August 13, 2012

12                          Respectfully submitted,

13

14                          *Enrique Santos*

                        Enrique Santos

15                          *Attorney for Plaintiff*

16

17                  **DEMAND FOR JURY TRIAL**

18      Plaintiff, MARCELA S. SANTOS, demands a trial by jury in this action.

19  Date:  August 13, 2012

20                          *Enrique Santos*

                        Enrique Santos

21                          *Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV12- 6952 ABC (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ]  **Western Division**
     **312 N. Spring St., Rm. G-8**
     **Los Angeles, CA 90012**

[ ]  **Southern Division**
     **411 West Fourth St., Rm. 1-053**
     **Santa Ana, CA 92701-4516**

[ ]  **Eastern Division**
     **3470 Twelfth St., Rm. 134**
     **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
ENRIQUE SANTOS (SBN 93256)
esantos@comcast.net
842-B Rockville Pike #511
Rockville, MD 20852
240-888-8047

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| MARCELA S. SANTOS, aka D.L. SANTOS, an individual | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV 12- 06952 ABC (JCGx) |
| v. | |
| POSSE FOUNDATION, INC., a New York Corporation (see attached) | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

        A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __ENRIQUE SANTOS, Esq._____, whose address is __842-B Rockville Pike #511, Rockville, MD 20852 (240-888-8047; esantos@comcast.net)__.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

TERRY NAFISI

Clerk, U.S. District Court

Dated: __AUG 1 3 2012__          By: _____

                                         L. MURRAY
                                         Deputy Clerk
                                         (Seal of the Court)
                                         (1134)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1 | ENRIQUE SANTOS (SBN 93256)
esantos@comcast.net
2 | 842-B Rockville Pike #511
Rockville, MD 20852
3 | Telephone: 240-888-8047
Facsimile: 240-465-0698
4 | Attorney for Plaintiff

5

6

# ORIGINAL

7

8 | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

9

10 | MARCELA S. SANTOS,                    **CV 12 - 06952** ᴬᴮᶜ    (JCGₓ)
aka D.L. SANTOS, an individual          )
11 |                                      )  CASE NO. _____
        Plaintiff,                       )
12 |                                      )  **COMPLAINT FOR BREACH OF**
        vs.                              )  **FIDUCIARY AND CONTRACT**
13 |                                      )  **DUTIES; PROMISSORY**
POSSE FOUNDATION, INC., a New            )  **ESTOPPEL**
14 | York Corporation, and TRUSTEES OF    )
GRINNELL COLLEGE, dba GRINNELL)          **DEMAND FOR JURY TRIAL**
15 | COLLEGE, an Iowa Corporation,        )
                                         )
16 |        Defendants.                   )
_____)

17

18 |        Plaintiff MARCELA S. SANTOS, aka D.L. SANTOS ("D.L."), for her

19 | Complaint against Defendants THE POSSE FOUNDATION, INC.("Posse") and

20 | THE TRUSTEES OF GRINNELL COLLEGE ("Grinnell" or "the College"), and

21 | each of them, alleges as follows:

                Complaint and Demand for Jury Trial - 1

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| MARCELA S. SANTOS, aka D.L. SANTOS<br>305 Farragut Ave, Rockville, MD 20851 | POSSE FOUNDATION, INC., 14 Wall St, Suite 8A-60, New York, NY 10005<br>and TRUSTEES OF GRINNELL COLLEGE, dba GRINNELL COLLEGE, 733<br>Broad St, Grinnell, IA 50112 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| ENRIQUE SANTOS, Esq.   240-888-8047 Tel<br>842-B Rockville Pike #511   240-465-0698 Fax<br>Rockville, MD  20852   esantos@comcast.net | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☐ No   ☑ MONEY DEMANDED IN COMPLAINT: $ 400,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
BREACH OF FIDUCIARY AND CONTRACT DUTIES; PROMISSORY ESTOPPEL

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☑ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV 12 - 06952 ABC JCG**

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

AUG 13 2012

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | MARYLAND |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES - Posse Foundation, Inc.<br>LOS ANGELES - Trustees of Grinnell College | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | DISTRICT OF COLUMBIA - First, Third, Fourth and Fifth Causes of Action<br>IOWA - Second Cause of Action |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Eunjue Santos_  Date August 13, 2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |